UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| SCOTT FRECHETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00172-LEW |
| | ) | |
| NORMAN GAUDETTE, | ) | |
| ROGER BEAUPRE, and | ) | |
| CITY OF BIDDEFORD, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER ON CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Scott Frechette alleges Defendant Norman Gaudette sexually assaulted him in 1988, when Frechette was a minor and Gaudette was a police officer employed by the City of Biddeford. Mr. Frechette also alleges that Roger Beaupre, the Chief of the Biddeford Police Department, was deliberately indifferent to the risk posed by Officer Gaudette and failed to take appropriate action to prevent the abuse. Plaintiff filed this civil action against Mr. Gaudette, Chief Beaupre, and the City of Biddeford, asserting violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and related state laws. Complaint (ECF No. 1).

Defendants Roger Beaupre and the City of Biddeford now move for summary judgment on Plaintiff's § 1983 claims. City Defendants' Motion for Summary Judgment (ECF No. 85). The motion is granted for the reasons set forth herein.

## SUMMARY JUDGMENT FACTS

Defendant Norman Gaudette joined the Biddeford Police Department in 1973. He attained the rank of captain in the late 1980's and remained a member of the department until 2000. Plaintiff Scott Frechette was born in May, 1972, and grew up in Biddeford, Maine. Frechette met Gaudette in 1988 when visiting the police station to see his probation officer. The two talked and Frechette told Gaudette he had no place to stay. Gaudette contacted the city administrator and arranged for Frechette to stay at a motel. Gaudette transported Frechette to the motel and offered Frechette an opportunity to work in Gaudette's cleaning business, starting that night. Gaudette brought Frechette to a job site and returned him to the hotel later that evening. After returning to the hotel, Gaudette subjected Frechette to sexual abuse, according to Frechette, whose account is accepted as true for purposes of summary judgment.

In 1990, Frechette made statements to Detectives Terry Davis and Dick Gagne of the Biddeford Police Department indicating that Gaudette had subjected him to a sexual assault. Later that year, Mike Pulire, an investigator with the Office of the Maine Attorney General, interviewed Frechette. In the interview, Frechette denied that Gaudette had abused him. A couple days later, when talking to Davis and Gagne, Frechette said there had been sexual contact and he explained that he was afraid to report it because Gaudette had warned him he would be in trouble if he did.

In January, 1991, Frechette met with an attorney and a private investigator at Frechette's place of work. At the meeting, Frechette wrote a statement recanting his prior claims. According to Frechette, he was encouraged to make the recantation in exchange

for assistance with certain legal matters and he thought the attorney who spoke with him was a state employee.

In April, 1991, Frechette appeared before a grand jury to give testimony concerning his interaction with Gaudette. Frechette testified that he made a report of sexual abuse and that he wrote the statement recanting his claim of sexual abuse. The grand jury did not indict Gaudette. Sometime thereafter, Frechette moved to Florida.

Since becoming the Biddeford Police Department Chief, Chief Beaupre has received allegations that three of his officers engaged in acts of sexual abuse: Defendant Norman Gaudette, Stephen Dodd, and Robert Devou.

Concerning Defendant Gaudette, prior to 1990 and in 1990, the Department received reports of sexual misconduct from two persons other than Plaintiff Frechette. Plaintiff has introduced evidence that Defendant Chief Beaupre's response concerning an early report (circa 1980s) by one young man[1] had the effect of suppressing the report. Deposition of Robert Poisson at 13 – 20 (ECF No. 89-3); Deposition of Robert Devou at 29 – 30 (ECF No. 89-4). Also prior to Plaintiff's involvement with Gaudette, another person, a juvenile, reported that Gaudette sexually assaulted him while he was working for Gaudette's cleaning company. Devou Dep. at 32. In both instances, the reports were given to Deputy Chief Martin and not to Robert Devou, although Devou was the internal affairs investigator at the time. Devou recollects that the reports were simply filed away and nothing was made of them. (The reports were not recovered during discovery.) However,

---

[1] The record is not conclusive as to the age of the complainant.

in 1990, around the time that Plaintiff made his report against Gaudette, Larry Ouellette[2] also reported being the victim of sexual misconduct by Gaudette. This time, Chief Beaupre made a referral to the York County District Attorney, and the matter was later investigated by the AG's Office. During the investigation, Chief Beaupre placed Gaudette on administrative leave. The investigation[3] culminated in the presentation to the grand jury, mentioned above, at which Plaintiff Frechette testified. After the investigation and grand jury process, Gaudette was reinstated to his position.

Concerning Officer Dodd,[4] in the 1980's one individual, a foster child of Dodd, reported sexual abuse and then recanted after Dodd bought him an automobile. It appears the matter did not result in any written record or report. Another individual cooperated with an AG's Office investigation conducted in 2002, which investigation eventually yielded statements from five individuals who reported sexual misconduct by Dodd. The parties dispute whether the investigation was brought at the instigation of Chief Beaupre, but in any event, the AG's Office declined to prosecute Dodd, evidently based on the quality of the evidence and the applicable criminal statute of limitation. Nevertheless, in

---

[2] Mr. Ouellette also filed a civil action against Defendants in this Court. *Ouellette v. Gaudette, et al.*, No. 2:16-cv-00053-LEW. Like Plaintiff herein, Mr. Ouellette asserted claims against the City of Biddeford and Chief Beaupre.

[3] Plaintiff appears to maintain that the investigation involved little more than Mr. Pulire's interview with Mr. Frechette. The parties dispute the existence and extent of an "internal investigation," though it appears there was some manner of internal investigation in which Mr. Gaudette received backing from his union.

[4] In a third, related action, *Lauzon v. Dodd, et al.*, No. 2:16-cv-00051-LEW, Matthew Lauzon alleged that the City of Biddeford and Chief Beaupre are responsible for abuse he suffered at the hands of Dodd, in 2000, which abuse Mr. Lauzon did not report to authorities until 2014. In or around the year 2014, Mr. Lauzon discussed his abuse with another individual allegedly abused by Dodd and, evidently in connection with social media activity, other parties gradually came forward, including former officer Robert Devou, who evidently (the statements of fact do not relate this) offered statements concerning the history of the presentation of reports against Gaudette and Dodd to the Biddeford Police Department.

2003, Chief Beaupre, through administrative action, ended Dodd's career as a Biddeford police officer. While the record indicates the Department took down statements involving two of the reports against Dodd, whatever documents the statements were written down in were not filed with other records of criminal reports or otherwise maintained. At least, Defendants could not locate any such documents in connection with discovery in this case and related cases, circa 2016.

Concerning Officer Devou, in 2008, an individual reported sexual misconduct after Devou had retired from the Department. The matter was referred to the AG, but did not result in a criminal prosecution.

In 2015, allegedly as the result of social media activity, Plaintiff Frechette became aware that others had made reports of sexual abuse allegedly perpetrated by Defendant Gaudette, including incidents that predated Frechette's encounter with Gaudette. Before learning of these disclosures, it had not occurred to Frechette that the City of Biddeford or the chief of its police department might be subject to legal liability for acts undertaken by Mr. Gaudette. Citing his own declaration, Frechette offers the following additional statements:

> I had no reason to believe prior to 2015 that Chief Beaupre knew or had reason to know of Norman Gaudette's sexual abuse of juveniles before Norman Gaudette abused me. It never once crossed my mind because I did no believe until recently that a police department that I trusted would ever tolerate criminal and abusive behavior by an officer within its ranks.

Declaration of Scott Frechette ¶ 3 (ECF No. 89-21).

> I first discovered that Chief Beaupre knew … about Capt. Gaudette's sexual abuse of juveniles when I saw numerous postings in social media in 2015 about the issue. …

5

*Id.* ¶ 4.

> …. I did not know either of the[ other] individuals [abused by Gaudette] and only became aware of their names in 2015.

*Id.* ¶ 6.

> I believe that if I had attempted to contact Robert Devou, Robert Poisson, or Deputy Chief Ben Martin [individuals involved in investigations related to Defendant Gaudette] – none of whom I ever knew of until 2015 – they would not have provided me with any information. The extensive social media discussion in 2015, and the ensuing media coverage, brought these individuals forward in a way that would not have happened before then. None of the people who knew about Norman Gaudette's abuse of minor[s] before I was abused came forward with the information about Chief Beaupre's knowledge until 2015 and thereafter.

*Id.* ¶ 7.

> After I was sexually abused by Norman Gaudette I did not want to think about or talk about what he had done to me. I was embarrassed and ashamed and had been manipulated by [his] counsel into signing an inaccurate recantation of my allegations. When I heard about the allegations involving other individuals … and Robert Devou's letter was published, I began thinking about everything that had happened to me and for the first time in over 25 years ….

*Id.* ¶ 8.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As cautioned by the Supreme Court, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A

material fact is one that has the potential to determine the outcome of the litigation. *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in his favor. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case.").

Defendants Roger Beaupre and the City of Biddeford seek summary judgment against Plaintiff's claims. Motion for Summary Judgment (ECF No. 85). Principally, they contend Plaintiff's action is barred because it was filed outside the applicable six-year statute of limitation and Plaintiff is not entitled to a deferred accrual date. *Id.* at 1 – 7. In response to this argument, Plaintiff asserts he did not have actual or constructive notice of his claim against the City of Biddeford or Chief Beaupre until he became aware, in 2015, of social media accounts related to incidents that preceded his encounter with Gaudette. He asserts that the prior incidents involving Gaudette were effectively suppressed behind a "blue wall of silence" because they did not result in any proceeding against Gaudette and the Department did not preserve a written record of the incidents. Plaintiff's Response at 4 - 10 (ECF No. 90).

The federal Civil Rights Act, 42 U.S.C. § 1983, authorizes persons deprived of "any rights, privileges, or immunities secured by the Constitution and laws" through state action, to pursue legal redress by means of a civil suit against appropriate state officials. *McKenney v. Mangino*, 873 F.3d 75, 79 (1st Cir. 2017). "In bringing suit, however,

7

plaintiffs must act within the prescribed statute of limitations; otherwise, the defendant may use the untimely filing as an affirmative defense which, if validated, precludes the court from granting the requested relief." *Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008).

In Maine, cases brought under section 1983 are subject to the six-year statute of limitations set forth in 14 M.R.S. § 752. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding that the state statute of limitation for personal injury torts applies in the context of federal actions under section 1983); *Small v. Inhabitants of Belfast*, 796 F.2d 544, 546 (1st Cir. 1986). Although federal courts borrow the statute of limitations period from state law, federal law governs the accrual date of the action. *Wallace*, 549 U.S. at 388. The accrual date, or the point in time at which the statute of limitations begins to run, is "when the plaintiff knows, or has reason to know, of the injury on which the action is based," *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992), assuming that the injury affords "the basis for an action" because the party responsible for the injury is apparent from the face of things. *Randall v. Laconia, NH*, 679 F.3d 1, 7 (1st Cir. 2012) (quoting *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 646 (2010)).

But when the injury or the identity of the responsible party is not apparent to the person harmed, an action will accrue for limitation purposes only "when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (citing *United States v. Kubrick*, 444 U.S. 111, 121-24 (1979)); *see also Randall*, 679 F.3d at 7. The discovery rule incorporates an objective standard, *Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014), and requires the plaintiff to demonstrate that the foundational

facts underlying the claim were "'inherently unknowable" when the injury arose.[5] *Attallah v. United States*, 955 F.2d 776, 780 (1st Cir. 1992) (quoting *Levin v. Berley*, 728 F.2d 551, 553 (1st Cir. 1984)). Facts are "inherently unknowable" when they are "incapable of detection by the wronged party through the exercise of reasonable diligence." *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 213 (1st Cir. 1999) (quoting *Tagliente v. Himmer*, 949 F.2d 1, 5 (1st Cir. 1991)). Thus, once a plaintiff either knows he has been injured and "understand[s] the 'causal connection between the government and h[is] injury'" or "reasonably should have known or discovered [the factual basis for his claim] in the exercise of due diligence," that plaintiff "must act expeditiously or risk abdicating any legal remedy." *Donahue v. United States*, 634 F.3d 615, 623, 624 (1st Cir. 2011) (quoting *Callahan v. United States*, 426 F.3d 444, 451 (1st Cir. 2005)). Due diligence in this context imposes a duty on the injured party to investigate, including by seeking advice from a lawyer about potential claims. *Gonzalez*, 284 F.3d at 289. When considering whether a claim was inherently unknowable, a court will impute to the plaintiff an awareness of any knowledge that would have been uncovered through reasonable inquiry. *Skwira v. United States*, 344 F.3d 64, 77 (1st Cir. 2003).

Because the statute of limitation is an affirmative defense, it is Defendants' initial burden to put forward evidence that is conclusive of the issue. *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35-36 (1st Cir. 1998). If they do so, the burden then shifts to

---

[5] The federal discovery rule allows courts to be "slightly more forgiving" in cases when "the identity of the individual(s) responsible for an injury [is] less evident" and the circumstances that gave rise to the injury did not give the plaintiff "reason to suspect governmental involvement." *Skwira v. United States*, 344 F.3d 64, 77 (1st Cir. 2003).

Plaintiff to establish the statute of limitation does not apply. *Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez*, 659 F.3d 42, 50 n.10 (1st Cir. 2011). And, importantly, where the opposition to the statute of limitation defense rests on the discovery rule, the burden of demonstrating the statute was tolled falls on the plaintiff. *Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc.*, 812 F.3d 213, 216-17 (1st Cir. 2016); *Geo. Knight & Co.,* 170 F.3d at 213.

When a plaintiff alleges harms inflicted before he or she reached the age of majority, federal courts will borrow from state law tolling principles, and thus, in Maine, an action will not accrue before the plaintiff reaches the age of majority. *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483-84 (1980); 14 M.R.S. § 853. Plaintiff reached the age of majority in May of 1990. Unless the discovery rule further tolls the statute of limitations, Plaintiff's action expired six years later, in 1996 – more than 20 years before he filed this action. These circumstances satisfy Defendants' initial burden of proof. The burden, therefore, shifts to Plaintiff to demonstrate that the accrual date should be tolled until at least May 10, 2011, which is six years prior to the date Plaintiff filed his complaint.

Plaintiff asserts that even though he was aware of Gaudette's employment with the Biddeford Police Department from their very first interaction, he nevertheless "had no reason to believe prior to 2015 that Chief Beaupre knew or had reason to know of … Gaudette's sexual abuse of minors … and did nothing about it and/or covered it up." Resp. at 8 (ECF No. 90). He argues that facts relating to Chief Beaupre's potential involvement were not "generally available," a classification for some reason he limits to information

available in "any news media, public records, or social media." *Id.* He claims that this information was "hidden and w[as] not disclosed beyond the closed doors of the [police department]." *Id.* at 9. In response, Defendants assert Plaintiff's argument is inadequate to demonstrate that Plaintiff was "incapable" of uncovering a potential claim against either the City or its police chief. Reply at 1 (ECF No. 92). They add that Plaintiff has not uncovered any information that was inherently incapable of detection by him through the exercise of reasonable diligence in the years leading up to this lawsuit, including through the assistance of counsel, particularly as he knew his abuser was a municipal police officer. *Id.* at 1 – 3.

Plaintiff argues he is supported by *Donahue v. United States*. As I indicated in my summary judgment decision in the *Ouellette* matter, I find the case instructive for different reasons. In *Donahue*, the First Circuit applied the federal discovery rule to claims brought by the representatives of two individuals murdered at the behest of a mobster who, unbeknownst to his victims, was an FBI informant acting on confidential information leaked to him by corrupt FBI agents. *Donahue*, 634 F.3d at 616. Although the 'injury' was clear, because there was no reason for the plaintiffs to suspect or "understand the 'causal connection between the government and [the] injury,'" the First Circuit concluded that the plaintiffs' claims did not accrue on the date of the murders. *Id.* at 623, 625. Instead, the limitations period commenced upon the release of "generally available information" disclosed sixteen years after the murders, which information included testimony by the head of the FBI's organized crime unit who oversaw the informant and his FBI handler and testified to their extensive wrongdoings, and which testimony garnered "publicity [that]

11

spelled out in exquisite detail the facts needed for accrual." *Id.* at 625. Although the *Donahue* plaintiffs argued for a more lenient application of the discovery rule due, in part, to the "years of government evasion," the Court, nevertheless, refused to consider "whether the plaintiffs *actually* knew the information" contained in the widely-circulated reports and instead "charged [them] with knowing this information on or before" the date the information was released. *Id.* at 626 – 27. The court reasoned the media flurry provided the plaintiffs with "considerably more than a mere hunch, hint, suspicion, or rumor" regarding the government's involvement. *Id.* at 626.

Unlike in *Donahue*, in this case the Defendant's abuse and official status were "open and obvious" to Plaintiff. Plaintiff not only knew he had been harmed by Gaudette, but also knew that Gaudette was employed by the Biddeford Police Department.[6] *Id.* at 625; *see Kubrick*, 444 U.S. at 122 ("The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury."). Plaintiff was in possession of at least enough information to seek legal advice, to set him on the government's trail, and make a claim within the limitations period, unlike the plaintiffs in *Donahue*. An "avalanche of publicity," *Donahue*, 634 F.3d at 625, was not required to

---

[6] As I concluded in the related matter of *Lauzon v. Dodd*:

> Like a patient who knows he has been harmed by a specific physician, Plaintiff knew he had been harmed, in a most horrible way, by a Biddeford Police Officer (whether or not [Gaudette] was acting under color of law) and could have been notified by an attorney of the potential of asserting claims against the City and Defendant Beaupre as well as the importance of engaging in reasonable investigation – if he had only asked. *Kubrick*, 444 U.S. at 122 ("If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.").

No. 2:16-CV-00051-LEW, 2019 WL 2996904, at *7 (D. Me. July 9, 2019).

alert Plaintiff to Defendant Gaudette's connection to the Biddeford Police Department and, by extension, to his potential claims against Defendant Gaudette's supervisor and employer. Plaintiff's Response reinforces this conclusion: "It is well-settled law that a law enforcement officer's illegal and unauthorized actions taken by virtue of the officer's authority under state law are actions taken 'under color of law' making municipal defendants potentially liable for those actions." Response at 11. This would have been the advice given to Plaintiff upon consultation with a lawyer of reasonable competence, had he asked.

Contrary to the standard for which Plaintiff impliedly argues, under the federal discovery rule "a plaintiff is not entitled to wait until all of the facts in support of the claim are known." *Skwira*, 344 F.3d at 84 (Boudin, C.J., concurring); *see also Donahue*, 634 F.3d at 626 (emphasizing that "[u]nder the discovery rule ..., irrefutable proof of a combination of wrongful conduct and government responsibility for that conduct is not essential"). Plaintiff's awareness of his abuser's affiliation with the Biddeford Police Department supplied Plaintiff with "enough information to lead a reasonable person in his position to seek advice about a possible claim" against Defendants Beaupre and the City of Biddeford.[7] *See Skwira*, 344 F.3d at 84 ("[O]nce the plaintiff knows enough to provoke

---

[7] When discussing the "diligence-discovery rule" (albeit within the context of a medical malpractice claim brought pursuant to the Federal Tort Claims Act), the Second Circuit instructed:

> A claim will accrue when the plaintiff knows, or should know, enough "to protect himself by seeking legal advice." [*Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)] (internal quotation marks omitted). Once an injured party . . . knows enough to warrant consultation with counsel, and acts with diligence . . . to undertake such consultation, conscientious counsel will have ample time to protect the client's interest by

13

a reasonable person to inquire further, the plaintiff has the duty to investigate." (Boudin, C.J., concurring)). Had Plaintiff consulted an attorney, he would have learned of his potential legal rights and the importance of initiating an action within the applicable statute of limitations. *See Kubrick*, 444 U.S. at 122 ("There are others who can tell him if he has been wronged, and he need only ask.").

Plaintiff's contentions are further undermined by consideration of the "alternate component of the accrual calculus – the information that further inquiry would have revealed." *Donahue*, 634 F.3d at 625. Actual knowledge of the injury and its cause or the presence of generally available information regarding the injury and its cause is not the only quantum of knowledge that triggers the running of the statute of limitations. *Id.* at 623. Instead, accrual begins "when either the generally available information or the likely outcome of a reasonably diligent investigation that follows inquiry notice is sufficient to ground a reasonable belief that the plaintiff has been injured and that there is a causal nexus between the injury and some governmental conduct." *Id.* at 624. As Defendants argue, had Plaintiff pursued his claim with "reasonable diligence" in the early 1990s (for example, with the advice and assistance of an attorney), he likely would have discovered information as probative of the matter as what he was able to discover in 2015, including the reports concerning other allegations of sexual misconduct filed against then Officer Gaudette and

---

investigating the case and determining whether, when, where, and against whom to bring suit.

*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011). The court continued: "An accrual date that turns on when a plaintiff (or his lawyers) finally decides to take action, rather than when the plaintiff was sufficiently alerted to the appropriateness of seeking legal advice, would render the limitations period meaningless." *Id.* at 141-42.

information regarding the investigation and events leading to Gaudette's 1990 administrative leave.

Even if I were to assume, in the absence of evidence, that Plaintiff could not have secured counsel before May of 1996, or that, with the aid of counsel, he would not have uncovered through the civil discovery process information that implicated Chief Beaupre and the City, Plaintiff still would need to demonstrate that it would have been fruitless to explore by any other means, throughout the 21-year period spanning May of 1990 (age of majority) and May of 2011 (six years before he filed suit), whether Chief Beaupre and the City might have known that Defendant Gaudette presented a danger to minors in his community. Plaintiff would need to convince me, for example, that it was exclusively through another person's social media activity in 2015 that any of this information could possibly have come to light. The record generated by Plaintiff does not provide that level of assurance.

"[T]he duty of investigation under the discovery rule is not a negligible one, especially where a plaintiff knows the essential facts underlying his claim." *Marrapese v. State of R.I.*, 749 F.2d 934, 943 (1st Cir. 1984). Here, for example, Plaintiff could have consulted an attorney, initiated a civil action against Gaudette, conducted discovery for records concerning any history of reports of similar conduct in the past, taken appropriate depositions and amended his complaint to pursue supervisory and municipal claims.[8]

---

[8] Indeed, given the nature of the underlying claim, it is highly improbable that any Court would have granted a motion to dismiss municipal and supervisory liability claims had Plaintiff advanced those claims at the inception of a civil action within the limitations period. *See*, *e.g.*, *Leatherman v. Tarrant Cty.*

15

"Critically, when the plaintiff knows or should know enough to prompt a claim, he may not yet know enough to win the suit." *Skwira*, 344 F.3d at 84. Alternatively, Plaintiff could have made his circumstances known within the community through other speech activity designed to elicit information pertaining to sexual abuse of minors by Biddeford police officers. Instead, Plaintiff "did not want to think about or talk about" it and only "began thinking about everything that had happened to [him] and for the first time … 25 years" later. Declaration of Scott Frechette ¶ 8.

I do not minimize the trauma caused by an incident such as the one described by Plaintiff. I am not "blam[ing]" Plaintiff for not bringing his case earlier. *See* Response at 10. A judge applies the law as it stands. Federal judges do not decide cases on generalized notions of fairness when statutes control the resolution of a case. If the law is unpopular, that is a matter for lawmakers, not unelected judges. To avoid confusion about statutes of limitation and American civics, the First Circuit explains:

> [S]tatutes of limitation are designed to operate mechanically. They aspire to bring a sense of finality to events that occurred in the distant past and to afford defendants the comfort of knowing that stale claims cannot be pursued. *See Rakes* [*v. United States*, 442 F.3d 7, 20 (1st Cir. 2006)]. Their mechanical operation may at times have seemingly harsh consequences, but the amelioration of such consequences is a matter for Congress rather than for the courts. *See Skwira,* 344 F.3d at 86 (Boudin, C.J., concurring); *cf. Tasker v. DHL Ret. Sav. Plan,* 621 F.3d 34, 43 (1st Cir. 2010) (observing that courts are not free to decide cases on generalized notions of fairness but, where statutes are in play, must follow the path demarcated by the legislature).

*Donahue*, 634 F.3d at 629.

---

*Narcotics Intel. And Coordination Unit*, 507 U.S. 163 (1993) (disavowing use of heightened pleading for municipal liability claims asserted under § 1983).

## CONCLUSION

For the foregoing reasons, Roger Beaupre and the City of Biddeford's Motion for Summary Judgment (ECF No. 85) is **GRANTED**. Count I and Count II are **DISMISSED WITH PREJUDICE**. Given that the dismissed claims against Roger Beaupre and the City of Biddeford substantially overlap with the remaining claim(s)[9] against Mr. Gaudette, and given that the delay occasioned by an immediate appeal is not inequitable, there is no just reason for delay and final judgment will enter as to Defendants Roger Beaupre and the City of Biddeford pursuant to Rule 54(b).

**SO ORDERED.**

**Dated this 8th day of November, 2019.**

                                                        /s/ Lance E. Walker
                                                        U.S. DISTRICT JUDGE

---

[9] In Count III of the Complaint, Plaintiff asserts a claim of "Sexual Assault" against Defendant Gaudette. Among other remedies, Plaintiff requests "attorneys' fees and costs pursuant to 42 U.S.C. § 1983." Defendant Gaudette did not join in the City Defendants' motion for summary judgment. Nor has he advanced the statute of limitation defense in his own right to undercut Count III to the extent it advances a § 1983 federal claim, though he has preserved the defense in his Answer (ECF No. 4).